# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

Nº 09-CV-4496 (JFB)

---

IBRAHIM M. IBRAHIM,

Plaintiff,

VERSUS

MICHAEL J. ASTRUE,

Defendant.

---

**MEMORANDUM AND ORDER**
February 4, 2011

---

JOSEPH F. BIANCO, District Judge:

Ibrahim Mansour Ibrahim (the "plaintiff" or "Ibrahim") commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of defendant Commissioner of the Social Security Administration (the "Commissioner") that found plaintiff to be ineligible for supplemental security income benefits ("SSI") for failing to satisfy the applicable income and resources requirement. The Commissioner has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

There is substantial evidence to support the Commissioner's conclusion that plaintiff failed to satisfy the applicable income and resources requirement to be eligible for SSI. It is abundantly clear from the record that plaintiff was buying and controlling various properties and placing them in the names of family members. Moreover, there are numerous contradictions and inconsistencies in the record with respect to plaintiff's statements that he legitimately transferred the property to his relatives and had no control over them, such that the ALJ had substantial basis to reject plaintiff's claims and find them not to be credible. In an effort to provide further support for his claim, plaintiff has submitted additional evidence to this Court that was not part of the administrative record. As a threshold matter, plaintiff has failed to demonstrate that there is good cause for failure to produce these documents earlier. In any

event, a remand is not warranted based upon this new evidence because the additional documentation is not material given that, even when it is considered, it does not provide support for his assertion that he legitimately transferred the property at 100 Tyrconnell Avenue, Massapequa Park, New York, to his sister or that he lacked control over the sales proceeds of the property at 9 Dover Road, Massapequa, New York. In other words, there is simply no possibility that this immaterial evidence would alter the ALJ's clear and well-supported conclusion, and it certainly does not alter the Court's conclusion that the Commissioner's decision was supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings is granted.

I. BACKGROUND

On July 21, 2005, plaintiff filed an application for SSI, alleging that his disability onset date was June 1, 2005. (*Id*. at 86-88.) Plaintiff was initially found to be eligible for SSI benefits but, upon re-review of his financial records in 2008, his SSI benefits were terminated.

A. Facts

Plaintiff immigrated to the United States with his family in 1996. (AR[1] at 146.) In 1998, plaintiff purchased and moved into a house at 100 Tyrconnell Avenue, Massapequa Park, New York ("100 Tyrconnell Avenue"). (*Id*. at 144.) The purchase price of the house was $157,000. (*Id*.) To finance the purchase, plaintiff paid approximately $39,000 in cash and took out a mortgage loan for $117,750 from GreenPoint Bank to cover the remaining purchase balance. (*Id*. at 37-38, 144.) In 1999, plaintiff purchased a second home at 9 Dover Road, Massapequa, New York ("9 Dover Road") in the name of his three daughters for a total purchase price of $147,000. (*Id*. at 146-47.) Plaintiff paid $90,000 in cash for the house with money that his daughters allegedly inherited from plaintiff's deceased mother-in-law. (*Id*.) The remainder of the balance was paid through a home equity loan on the house at 100 Tyrconnell Avenue from Fleet Bank. (*Id*. at 31, 149.) The loan financed by Fleet Bank, which was later acquired by Bank of America, was for $117,800.13 (*id*. at 31), $57,000 of which was used to pay for 9 Dover Road. (*Id*. at 75, 144-45.) Plaintiff alleges that the remainder of the loan was used to pay the loan costs ($7,000), cover living expenses from 1999 to 2005 (approximately $33,000), and to make an early payment on the GreenPoint Bank loan ($20,000) so that the value of the mortgage would equal the market value of 100 Tyrconnell Avenue in fairness to plaintiff's sister, to whom the property was allegedly transferred.[2] (*Id*. at 75.)

Plaintiff alleges that, in February of 2002, he transferred the house at 100 Tyrconnell Avenue to his sister, Aida Mansour Ibrahim ("Aida") by a quitclaim deed, (*id*. at 26, 61, 152-53; Pl.'s Opp. Ex. 2), though also alleging to the Social Security Administration ("SSA") that Aida was senile. (*Id*. at 52 (decision of the SSA

---

[1] "AR" refers to the administrative record filed on appeal.

[2] Although plaintiff asserted that he paid $20,000 to GreenPoint Bank, he also stated that he paid Aida $20,000 so that the value of the mortgage would equal the market value of 100 Tyrconnell Avenue. (AR at 135.)

2

on reconsideration of its initial determination to discontinue payment of SSI benefits to plaintiff).) Plaintiff's sister did not purchase 100 Tyrconnell Avenue, but instead allegedly agreed to make monthly payments on plaintiff's two mortgages on 100 Tyrconnell Avenue though the mortgages remained in plaintiff's name. (*Id.* at 31, 38, 135, 152-53; Pl.'s Opp. Ex. 1.) It is unclear what, if any, portion of the mortgages Aida actually paid herself. The evidence on record indicates that the Bank of America loan taken out on 100 Tyrconnell Avenue by plaintiff was fully repaid with the sale proceeds of the property. (*Id.* at 131-32.) Plaintiff's loan from GreenPoint Bank on 100 Tyrconnell Avenue was partially repaid with the sale proceeds on the property, (*id.* at 131-32), and there is no evidence suggesting that Aida made any payments to GreenPoint Bank to cover the remaining balance. Plaintiff asserts that 100 Tyrconnell Avenue was Aida's home between February 22, 2002, (*id.* at 75, 155), when she obtained title to the house, until October 20, 2006, when she sold the property. (*Id.* at 55, 75.) Evidence submitted by plaintiff in support of his SSI eligibility shows Aida as living during that time period at 100 Tyrconnell Avenue, (*id.* at 24-25 (quitclaim deed for 61 Francine Drive dated February 22, 2002), *id.* at 27 (electric bill from December of 2002)), at 9 Dover Road, (*id.* at 28 (Durable General Power of Attorney executed by plaintiff and Aida on July 6, 2005), and at "P.O. Box 481, Glenwood Landing, New York 11547" (*id.* at 34-35 (letters from Bank of America to Aida dated April 3, 2006 regarding her loans)).

In September of 2004, plaintiff moved from 9 Dover Road to 117 Glenwood Road, Glenwood Landing, New York, which he rents. (*Id.* at 15, 156.) Plaintiff sold the house at 9 Dover Road in 2005 for $362,934. (*Id.* at 133, 157; Compl. at 16 (deed of sale on behalf of plaintiff's daughters).) The Closing Statement prepared by attorney Christopher J. Ridini accounts for the sale proceeds as follows:

1. $650 paid for legal fees
2. $14,520 paid to Century 21
3. $248,749 repaid to Bank of America for a loan
4. $4,454.99 to Pyramid Title Agency
5. $185 "to pick up closer"
6. $94,375 to plaintiff as custodian for his daughters

(*Id.* at 133-34; *see also* Compl. at 19 (outlining charges of Pyramid Title Agency).) The Bank of America loan repaid through the sale of 9 Dover Road was in plaintiff's name, (Compl. at 27), and appears to be a loan separate and apart from the home equity loan from Bank of America that was taken out by plaintiff on 100 Tyrconnell Avenue to finance the purchase of 9 Dover Road.

Plaintiff alleges that his sister sold the house at 100 Tyrconnell Avenue in 2006 for $415,000. (*Id.* at 131, 157.) Plaintiff represented his sister at the closing of the sale through power of attorney. (*Id.* at 28-30 (Durable General Power of Attorney); *Id.* at 55-63.) The Transfer Tax Return indicates that the house was conveyed on October 20, 2006 for $535,000. (*Id.* at 58.) Plaintiff alleges that the difference between the sale price on the Transfer Tax Return and the Closing Statement was due to the purchaser's request to ask "for more

3

mortgage from the bank so, [the higher purchase price] was constructive . . . ." (*Id*. at 157.) The Closing Statement accounts for the sale proceeds as follows, consistent with a purchase price of $415,000:

1. $117,800.13 covered plaintiff's loan from Bank of America, formerly Fleet Bank
2. $39,492.09 covered a loan from GreenPoint Bank
3. $400 was paid to the title closer
4. $450 covered Aida's attorney's fees
5. $2,500 as "check Z & H to H & Z Abstract"
6. $254,357.78 to Aida

(*Id*. at 131-32.) It is unclear who prepared the Closing Statement, which is not signed and does not contain letterhead. Plaintiff has supplemented the Closing Statement in the administrative record with a Check Disbursement Sheet, which further outlines the various disbursements pursuant to the sale. (Compl. at 31.) This supplemental information, however, does not support plaintiff's assertion. In particular, it is unclear how much of the financial information outlined in the Check Disbursement Sheet actually pertains to the sale of 100 Tyrconnell Avenue. The numbers listed on the sheet do not add up to either the $535,000 sum listed on the Transfer Tax Return or the $415,000 sum on the Closing Statement.

### B. Procedural Background

Plaintiff's continuing eligibility for SSI benefits was reviewed in April of 2008. Plaintiff was requested to submit financial information starting from October of 2005 to facilitate the review process. (AR at 41.) Based on the financial records provided by plaintiff, the SSA concluded that he was no longer eligible for SSI because he exceeded the applicable cut-off for income and resources. On September 2, 2008, plaintiff appealed the SSA's decision to cease paying plaintiff's SSI benefits. (*Id*. at 50.) Plaintiff's request for reconsideration was denied on September 5, 2008. (*Id*. at 52-54.) Plaintiff requested a hearing on this matter before an ALJ, (*id*. at 68-69), which was held on April 29, 2009. (*Id*. at 17.) On May 26, 2009, the ALJ issued a decision upholding the termination of plaintiff's SSI benefits. (*Id*. at 10-16.) The ALJ concluded that plaintiff "has excess income and exceeds the limitations of eligibility" for SSI. (*Id*. at 15.) Specifically, the ALJ determined that:

> The claimant is unable to document what happened to all the proceeds from the sale of . . . 9 Dover Road . . . . The claimant fails to provide independent documentation of the sale of the 100 Tyrconnel[l] Avenue property, the proceeds received and a distribution of all funds independent of the claimant's control, including his original cash contribution in the amount of $39,250. . . . As a result of the real estate transactions, the claimant received the benefit of and exercised control over unearned income and received in-kind-support and maintenance . . . The claimant has not submitted any evidence that he no longer controls the resources/proceeds from the real estate transactions. The claimant failed to supply a closing statement from a financial institution or

attorney demonstrating a transfer of all of the proceeds from the claimant's control to another individual or a statement of [sic] demonstrating that the claimant does not control the resources/proceeds.

(*Id.* at 15-16.) Plaintiff appealed the ALJ's decision. (*Id.* at 9.) The Appeals Council denied plaintiff's request for review of the ALJ's decision on September 2, 2009. (*Id.* at 4-7.)

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on October 7, 2009, appealing the ALJ's decision that he was ineligible for SSI based on having exceeded the applicable income and resources cut-off. The Commissioner answered on February 8, 2010, and filed the pending motion for judgment on the pleadings on April 22, 2010. Plaintiff responded on May 19, 2010, and the Commissioner replied on June 4, 2010. The Court has fully considered the submissions and arguments of the parties.

## III. STANDARD OF REVIEW

A district court may only set aside a determination by an ALJ that is "based upon legal error" or "not supported by substantial evidence." *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*)). The Supreme Court has defined "substantial evidence" in Social Security cases as "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotations and citations omitted)). Furthermore, "it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, even if there is substantial evidence for the plaintiff's position. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey*, 145 F.3d at 111; *see also Jones*, 949 F.2d at 59 (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).

In order to obtain a remand based on additional evidence, a plaintiff must present new evidence that: "(1) is new and not merely cumulative of what is already in the record[;]" (2) is material, in that it is "relevant to the claimant's condition during the time period for which benefits were denied," probative, and presents a reasonable possibility that the additional evidence would have resulted in a different determination by the Commissioner; and (3) was not presented earlier due to good cause. *See Lisa v. Sec'y of the Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).

5

## IV. DISCUSSION

### A. Regulatory Framework

"The federal Supplemental Security Income program, 42 U.S.C. § 1381 *et seq.*, provides non-medical cash assistance to aged, blind or disabled persons. Under the statute, an aged, blind or disabled person is eligible for SSI if either their monthly income or overall available resources do not exceed certain maximum amounts set forth in the statute and regulations." *Frerks v. Shalala*, 848 F. Supp. 340, 343-44 (E.D.N.Y. 1994) (citing 42 U.S.C. § 1382 and 20 C.F.R. § 416 subparts D and K (income limits) and 20 C.F.R. § 416.1205 (resource limits).) The maximum dollar amount of resources for an individual is $2,000. *See* 42 U.S.C. § 1382(a)(1)(A), (B), and (a)(3); 20 C.F.R. § 416.1205. The resource limit for an individual residing with a spouse is $3,000, which is "deemed to include any resources . . . of such spouse whether or not such resources are available to such individual." 20 C.F.R. § 416.1202. The regulations define resources as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance." 42 C.F.R. § 410.1201(a). The regulations further explain that liquid resources are

> cash or other property which can be converted to cash within 20 days . . . . Examples of resources that are ordinarily liquid are stocks, bonds, mutual funds shares, promissory notes, mortgages, life insurance policies, financial institution accounts (including savings, checking, and time deposits, also known as certificates of deposit) and similar items.

42 C.F.R. § 410.1201(b). Nonliquid assets are

> property which is not cash and which cannot be converted to cash within 20 days . . . . Examples of resources that are ordinarily nonliquid are loan agreements, household goods, automobiles, trucks, tractors, boats, machinery, livestock, building and land.

42 C.F.R. § 410.1201(c). A home is exempt from the resource calculation if the SSI recipient actually resides in it. 42 U.S.C. § 1382b(a)(1); 20 C.F.R. § 416.1212. "Transfer of a resource for less than fair market value is presumed to have been made for the purpose of establishing SSI or Medicaid eligibility unless the individual . . . furnishes convincing evidence that the resource was transferred exclusively for some other reason." 20 C.F.R. § 416.1246(e). The burden is therefore on the individual claiming eligibility for SSI to rebut the presumption that a resource was transferred to establish SSI eligibility. *Id.*

As noted above, income must also be considered in determining SSI eligibility, which is separated into earned and unearned income. 20 C.F.R. § 416.1104. Earned income includes wages paid and net earnings from self-employment. 42 U.S.C. § 1382a(a)(1)(A). Exclusions to earned income must also be considered. 20 C.F.R. § 416.1112; Appendix to 20 C.F.R. § 416, subpart K. Unearned income, on the other hand, is defined as "support and

maintenance furnished in cash or kind." 42 U.S.C. § 1382a(a)(2)(A). Some examples of unearned income are private pensions, social security benefits, disability benefits, workers' compensation, and unemployment insurance benefits. *See* 42 U.S.C. §§ 1382a(a)(2)(B)-(F). Unearned income that is not food or shelter is valued at its current market value. 20 C.F.R. §§ 416.1123(c), 416.1130(a), 416.1131, 416.1140.

Income and resources must be considered together to determine if an individual exceeds the maximum allowable dollar amount of $2,000 for a single individual and $3,000 for an individual with a cohabiting spouse. *See Frerks*, 848 F. Supp. at 343-44; *see also Rasheed v. Astrue*, No. 07-CV-2726 (NGG), 2010 WL 3036795, at *4 (E.D.N.Y. July 30, 2010) ("The ALJ's eligibility determination is supported by substantial evidence on the record as a whole. The ALJ found that Plaintiff's resources exceeded $3,000 because he received monthly payments of $900 from workers' compensation after his injury in 1998 and a lump sum workers' compensation settlement of $63,100 in 1999.").

### B. The ALJ's Decision was Based on Substantial Evidence Supported by the Record

There is substantial evidence to support the ALJ's determination that plaintiff's income and resources exceeded the $3,000 threshold for an individual living with his spouse.

### 1. 100 Tyrconnell Avenue

The ALJ concluded that plaintiff failed to prove that he did not receive funds from the sale of 100 Tyrconnell Avenue. (AR at 16.) The ALJ found that plaintiff's allegations that he transferred this property to his sister were not credible because plaintiff alleged that his sister was senile. (*Id.* at 15.) "If the claimant's sister was senile she would not be in a position to pay the mortgage or handle her own affairs, including the care of the allegedly transferred property." (*Id.*) The Court concludes that the ALJ's determinations are supported by substantial evidence.

The documents submitted by plaintiff in support of his argument that he transferred 100 Tyrconnell Avenue to his sister show that, in fact, during the time she allegedly owned the property, Aida had listed different addresses as her residence. As noted above, Aida allegedly resided at 100 Tyrconnell Avenue between February of 2002 and October of 2006. Although there is evidence showing that Aida lived at 100 Tyrconnell Avenue, (*id.* at 27 (electric bill), 24-25 (quitclaim deed for the transfer of 61 Francine Drive[3] from plaintiff to Aida)),

---

[3] The ALJ did not consider plaintiff's property at 61 Francine Drive in his decision. Nor did this property come up in the administrative appeal process preceding the hearing before the ALJ. It appears that plaintiff may have submitted the quitclaim deed for 61 Francine Drive, signed on February 22, 2002, as proof that he transferred 100 Tyrconnell Avenue to his sister Aida because it lists her address as 100 Tyrconnell Avenue. The Court need not consider how the value of 61 Francine Drive, which appears to have been transferred from plaintiff to Aida, might play into plaintiff's eligibility for SSI because, in any event, there is substantial evidence to support the ALJ's conclusion that plaintiff's income and resources exceeded the allowable maximum for SSI. The

7

other documents submitted by plaintiff show that Aida lived elsewhere. The Durable General Power of Attorney, signed by plaintiff and Aida on July 6, 2005, lists Aida's address as 9 Dover Road. (*Id.* at 28-30.) Two letters from Bank of America to Aida, dated April 3, 2006, list her address as "P.O. Box 481, Glenwood Landing, New York 11547." (*Id.* at 34-35.)

The fact that plaintiff referred to his sister as "senile," (*id.* at 52), and represented her at the sale of 100 Tyrconnell Avenue through a Durable General Power of Attorney, (*id.* at 28-30, 55-63), further supports the ALJ's conclusion that plaintiff was actually in control of the property and, as the ALJ determined, undermined plaintiff's credibility. Plaintiff attempts to explain his remarks about his sister's senility by noting that Aida "is somewhat old lady with some health problems and sometimes lives with me to take care of her that is why she directes [sic] her mailes [sic] to the address where she exists in with me" for

"some what [sic] long time" and that she "needs help to manage her affairs." (Pl.'s Opp. at 2, 7, 8.) This, however, only serves to undermine plaintiff's argument that he sold property to a woman who is incapable of taking care of herself, expecting her to be responsible for paying out two mortgages.

The lack of evidence demonstrating mortgage payments by Aida on 100 Tyrconnell Avenue further supports the ALJ's conclusion that plaintiff maintained control of the property. As noted above, Aida did not actually pay a purchase price for 100 Tyrconnell Avenue, but instead allegedly agreed to pay the two mortgages taken out by plaintiff on the property. (*Id.* 152-53.) However, it is unclear what, if any, portion of the mortgage Aida actually paid herself. The evidence on record indicates that the Bank of America loan taken out on 100 Tyrconnell Avenue by plaintiff was fully repaid with the sale proceeds of the property. (*Id.* at 131-32.) Plaintiff's loan from GreenPoint Bank on 100 Tyrconnell Avenue was partially repaid with the sale proceeds on the property, (*id.* at 131-32), and there is no evidence suggesting that Aida made any payments to GreenPoint Bank to cover the remaining balance. The letters submitted by plaintiff indicating that Aida paid out loans on 100 Tyrconnell Avenue do not indicate whether the loans they refer to are with respect to 100 Tyrconnell Avenue or whether they are loans taken out by plaintiff or Aida. (*Id.* at 34-35.) Further, the letters refer to loans from Bank of America, and based on the Closing Statement for 100 Tyrconnell Avenue, plaintiff's loan on the property from Bank of America was repaid from the sale proceeds of the property. It is unclear what Aida actually paid for 100 Tyrconnell

---

Court notes, however, that plaintiff's statements with respect to 61 Francine Drive in his opposition papers are contradictory and further serve to undermine his credibility. Plaintiff states that, after arriving to the United States, he moved in with Aida, who was living at 61 Francine Drive, before purchasing 100 Tyrconnell Avenue in 1998. (Pl.'s Opp. at 4.) Plaintiff asserts that, in 2002, Aida sold 61 Francine Drive and moved into 100 Tyrconnell Avenue, of which she allegedly became owner. (*Id.*) However, plaintiff stated during the hearing before the ALJ that his sister was *renting* prior to moving into 100 Tyrconnell Avenue. (AR at 152.) Further, the quitclaim deed for 61 Francine Drive shows that *plaintiff* transferred the property to Aida, suggesting that plaintiff, not Aida, originally owned that property. (*Id.* at 24.)

8

Avenue, especially in light of the fact that she may also have received $20,000 from plaintiff so that the market value of 100 Tyrconnell Avenue would equal the value of the mortgages on the property that Aida would have to pay out. *See supra* n.2.

In a final attempt to buttress his argument that Aida owned and lived at 100 Tyrconnell Avenue, plaintiff submitted the following new evidence with his opposition papers: (1) a copy of a check from Aida to Fleet Bank for allegedly a loan payment on the property; (2) a receipt from the Village Justice Court directed to Aida; and (3) a quitclaim deed transferring 100 Tyrconnell Avenue from plaintiff to Aida. (Pl.'s Opp. Ex. 1-2.) Plaintiff has failed to demonstrate that the Court should accept and consider this evidence. Plaintiff has failed to explain how this evidence is material to his claims and would result in a different determination by the Commissioner had it been considered. *See Lisa*, 940 F.2d at 43. Further, plaintiff has failed to show good cause for why this evidence was not presented earlier in this proceeding. *Id.* Plaintiff has simply stated that somehow the quitclaim deed for the transfer of 100 Tyrconnell Avenue was lost by the SSA, (Pl.'s Opp at 3), but does not address why he had not submitted the other pieces of evidence earlier, having full access to the administrative record that clearly did not contain the new evidence plaintiff now submits. Even assuming, *arguendo*, that the Court accepts plaintiff's new evidence, it does not warrant a remand because it would not alter the outcome of the ALJ's decision (or this Court's review of that decision). The copy of the check from Aida to Fleet Bank does not indicate whether the check was issued as payment for a loan on 100 Tyrconnell Avenue and, more specifically, whether it was payment for a loan taken out by plaintiff rather than Aida. The check notes "Home Equity loan #716200" in the "for" section of the check. (Pl.'s Opp. Ex. 1.) The account number does not appear to be complete as all other account numbers noted by plaintiff are much longer. (*Cf.* AR at 31-40.) In any event, the account numbers for loans taken out by Aida start with "716200," (*id.* at 34-35), so it is unlikely that the check was for payment on plaintiff's loans. It is further unclear how the check could be in repayment of plaintiff's Bank of America loan on 100 Tyrconnell Avenue because that loan was fully satisfied with the sale proceeds of the property. (*Id.* at 131.) In addition, the receipt from the Village Justice Court does not actually list Aida's address at all so it cannot support plaintiff's argument that she lived at 100 Tyrconnell Avenue. (Pl.'s Opp. Ex. 1.) With respect to the quitclaim deed allegedly transferring 100 Tyrconnell Avenue from plaintiff to Aida, there is no evidence that this deed was recorded. Further, during his hearing plaintiff testified that he transferred the house to Aida in February of 2002, (AR at 155), whereas the quitclaim deed he submitted indicates that the transfer of 100 Tyrconnell Avenue did not take place until April 25, 2002.[4] (Pl.'s

---

[4] The Court also notes that the quitclaim deed transferring 61 Francine Drive from plaintiff to Aida, signed on February 22, 2002, lists both of their addresses as 100 Tyrconnell Avenue. This only serves to further confuse the facts and undermine the authenticity of the quitclaim deed provided by plaintiff on the transfer of 100 Tyrconnell Avenue, which was signed on April 25, 2002. It is unclear why Aida would list her address as 100 Tyrconnell Avenue in February of 2002 when she allegedly did not become the

Opp. Ex. 2.) The quitclaim deed only further erodes plaintiff's credibility.[5]

In sum, there is substantial evidence on the record to support the ALJ's conclusion that plaintiff was in control of 100 Tyrconnell Avenue. As a result, there is substantial evidence that plaintiff collected proceeds from the sale of the property on behalf of Aida—listed as $254,357.78 in the Closing Statement provided by plaintiff, (AR at 131-32)—clearly in excess of the $3,000 maximum allowed for SSI eligibility. Moreover, the Court has considered the additional evidence submitted to this Court and concludes that a remand is not warranted because, *inter alia*, there is no possibility that the additional evidence would have resulted in a different determination by the Commissioner.

### 2. 9 Dover Road

The Court need not address the parties' arguments with respect to 9 Dover Road because, as discussed above, there is substantial evidence to show that plaintiff exceeded the $3,000 threshold for SSI eligibility based on the sale of 100 Tyrconnell Avenue. In any event, in an abundance of caution, the Court has reviewed that portion of the decision as well and concludes that there is substantial evidence on the record to support the ALJ's determination that plaintiff controlled the proceeds from the sale of 9 Dover Road in excess of $3,000. Plaintiff alleges that he purchased this house in the name of his daughters, as their custodian, with $90,000 in cash as part of an inheritance his daughters allegedly received from plaintiff's mother-in-law, with the remainder of the purchase price financed through a loan. (*Id.* at 37-38, 146-47.) When the house was sold, plaintiff opened a bank account for his daughters, placing approximately $94,000 in that account. (*Id.* at 133-34.) While plaintiff accounted for the proceeds of the sale, (*id.* at 133-34), he did not submit evidence demonstrating that he lacks control over the money he placed in his daughters' account as their custodian.[6]

---

owner of the house until April of 2002.

[5] Similarly, with regard to the Check Disbursement Sheet that was attached to the Complaint, that document does not support plaintiff's position. It is unclear how much of the financial information outlined in this document actually reflects disbursement pertaining to the sale of 100 Tyrconnell Avenue. The numbers of the sheet do not add up to the sum listed on either the Transfer Tax Return or the Closing Statement for the property.

[6] As part of his complaint, plaintiff submitted a letter from Bank of America in support of his argument that all the proceeds from the sale of 9 Dover Road are accounted for and that he lacked control over those proceeds. Plaintiff has failed to demonstrate that the Court should accept and consider this evidence. Plaintiff has failed to explain how this evidence is material to his claims and would result in a different determination by the Commissioner had it been considered. *See Lisa*, 940 F.2d at 43. Further, plaintiff has failed to show good cause for why this evidence was not presented earlier in this proceeding. *Id.* Even assuming, *arguendo*, that the Court accepts plaintiff's new evidence, it does not warrant a remand because it would not alter the outcome of the ALJ's decision (or this Court's review of that decision). While the letter from Bank of America—indicating that plaintiff took out a loan for $248,749 (Compl. at 27)—confirms the amount on the Closing Statement for 9 Dover Road that was repaid to Bank of America, the letter does not support

## V. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted in its entirety. The Clerk of Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 4, 2011
Central Islip, New York

\* \* \*

The attorneys for defendants are: Candace Scott Appleton, of counsel, and Loretta E. Lynch, United States Attorney, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201.
Plaintiff is proceeding *pro se*: Ibrahim M. Ibrahim, 117 Glenwood Road, Glenwood Landing, NY 11547.

---

plaintiff's argument that he lacked control over the sales proceeds that went to his daughters.